IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOSEPH PAUL LOWERY,

      Petitioner,

v.                              CASE NO. 3:15-cv-185-MCR-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      This case is before the Court on ECF No. 1, Petitioner's *pro se*

Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The

Petition stems from Petitioner's Santa Rosa County conviction for multiple

felony and misdemeanor charges in nineteen separate cases, including

home invasion robbery, possession of a firearm during the commission of a

felony, aggravated assault with a firearm, possession of a firearm by a

convicted felon, armed burglary, grand theft, grand theft with a firearm, and

burglary. Petitioner claims the trial court erred by not attaching relevant

portions of the record to its order denying his motion for postconviction

relief, thereby denying Petitioner the right to withdraw his involuntary plea.

(ECF No. 1.) Respondent has filed a response and appendix with relevant portions of the state-court record, arguing that the Petition should be denied because Respondent's claim is without merit. (ECF No. 15.) Petitioner did not file a reply and the time for doing so has expired. Upon due consideration of the Petition, the response, and the state-court record, the undersigned recommends that the Petition be denied.[1]

## I. State-Court Proceedings

On December 14, 2000, Petitioner entered a "straight up" plea as a habitual felony offender in nineteen separate cases to multiple felony and misdemeanor charges, including home invasion robbery, possession of a firearm during the commission of a felony, aggravated assault with a firearm, possession of a firearm by a convicted felon, armed burglary, grand theft, grand theft with a firearm, and burglary. (*Id.* at 70–76.) Petitioner was adjudicated guilty and sentenced that same day as a habitual felony offender to a total of fifty years' imprisonment, with a ten-year minimum mandatory for count 1 in case 2000-CF-0062 (home invasion robbery). (*Id.* at 12–41.) The ten-year statutory minimum

---

[1] An evidentiary hearing is not warranted in this case because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

mandatory under Fla. Stat. § 775.087(2)(a) (2000)[2] was not part of the oral pronouncement, but was included in the written sentence. (*Id.* at 12–41, 161.) Petitioner appealed his judgment and sentence, which were affirmed by the First DCA on May 22, 2002, followed by the mandate on July 26, 2002. (*Id.* at 219.)

Petitioner filed his first motion for postconviction relief on May 27, 2003. (*Id.* at 8, 194–207.) Within his motion, Petitioner argued that his plea was involuntary because the trial court failed to inform him of the ten-year minimum mandatory. (*Id.* at 194–207.) He also argued that trial counsel was ineffective because Petitioner did not want to enter a plea,[3] Petitioner complained numerous times about counsel, counsel failed to investigate Petitioner's mental state, and counsel had a conflict of interest. (*Id.*) The trial court denied the motion on July 17, 2003. (*Id.* at 98, 209–11.) Notably,

---

[2] Under § 775.087(2)(a) (2000), a person convicted of home invasion robbery "and during the commission of the offense, such person actually possessed a 'firearm' or 'destructive device' . . . shall be sentenced to a minimum term of imprisonment of 10 years . . . ." Section 775.087(2)(b) further provides: Subparagraph (a)1., subparagraph (a)2., or subparagraph (a)2. does not authorize a court to impose a lesser sentence than otherwise required by law. Notwithstanding s. 948.01, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, *and the defendant is not eligible for statutory gain-time under s. 944.275 or any form of discretionary early release, other than pardon or executive clemency, or conditional medical release under s. 947.149, prior to serving the minimum sentence*." (Emphasis added).

[3] Without elaborating on this assertion, Petitioner merely contended: "It can be observed from the face of the records in previous court appearances that petitioner did not wish to enter a plea." (ECF No. 15-1 at 203.)

with respect to Petitioner's involuntary plea claim, the trial court denied the claim as facially insufficient because Petitioner failed to allege that he would not have entered the plea had he been aware of the minimum mandatory. (*Id.* at 209–10.) The First DCA affirmed on April 5, 2004, and the mandate followed on May 3, 2004. (*Id.* at 8.)

Petitioner then filed a second motion for postconviction relief on March 23, 2007, which the trial court denied on July 10, 2008. (*Id.* at 8–9.)[4]

On March 24, 2009, Petitioner filed a motion to correct illegal sentence under Fla. R. Crim. P. 3.800(a). (*Id.* at 227–33.) Petitioner argued that his habitual felony offender designation was illegal and that the written sentence imposing a ten-year minimum mandatory sentence did not comport with the Court's oral pronouncement. (*Id.*) On June 19, 2009, the court denied the motion to the extent it challenged the legality of

---

[4] This motion is not included within the record before this Court. However, according to the trial court, Petitioner's second motion for postconviction relief raised claims unrelated to his amended motion for postconviction relief filed on January 23, 2104. (ECF No. 15-1 at 126.) According to the publicly available online case file for Petitioner's underlying criminal conviction, Petitioner presented two claims in his second motion for postconviction relief: (1) Petitioner's plea was involuntary due to the effects of psychotropic medications; and (2) Trial counsel was ineffective for failing to notify the court of Petitioner's deteriorating and unstable mental condition at the time of his plea. *See* Santa Rosa Clerk of Court, *Florida v. Joseph Paul Lowery,* No. 2000-CF-000062 (Fla. Santa Rosa County Ct. Mar. 23, 2007), https://www.civitekflorida.com/ocrs/app/docketimage.pdf?query=t8JbsoX_w3R9lmZhtzt zQ8tUsVcyt769out3VFltQrujXGs9gWgWYgaSXl5uY-L2H9w9z6tb6nBYB_us_jfwj3zilQz 8YB2Bf-N7W_nJiiv5kefwyG04_T19lXyy2uqFOhbB48OzrsM&pages=36 (last visited July 18, 2017).

Petitioner's designation as a habitual felony offender, but conceded that under Florida law, if a discrepancy exists between the oral pronouncement and the written sentence, the oral pronouncement controls. (*Id.* at 235–38.) The trial court found, however, that Fla. Stat. § 775.087(2) (1997)—the statute in effect at the time of the offense—provided a statutorily required three-year minimum mandatory sentence for Petitioner's conviction for home invasion robbery, which could not be waived.[5] (*Id.*) The court, therefore, rescheduled the matter for a hearing to correct the trial court's prior oral pronouncement and written sentence to comply with the applicable three-year minimum mandatory statutory provision in § 775.087(2) (1997). (*Id.* at 235–38.)

Accordingly, at a hearing on September 25, 2009—at which Petitioner was not represented by counsel—the trial court changed Petitioner's sentence for home invasion robbery from a ten-year minimum mandatory to a three-year minimum mandatory. (*Id.* at 240–52, 285–86.) Petitioner appealed his resentencing and the First DCA reversed and

---

[5] Under § 775.087(2) (1997), a person convicted of home invasion robbery "and during the commission of the offense, such person possessed a 'firearm' or 'destructive device' . . . shall be sentenced to a minimum term of imprisonment of 3 years. Notwithstanding s. 948.01, adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, *and the defendant is not eligible for statutory gain-time under s. 944.275 or any form of discretionary early release, other than pardon or executive clemency, or conditional medical release under s. 947.149, prior to serving the minimum sentence.*" (Emphasis added).

remanded so Petitioner could be represented by counsel at the hearing.
(*Id.* at 288.)

Upon remand, counsel for Petitioner argued that the appellate court
reversed because the trial court should have reverted to the initial
sentence imposed (without the minimum mandatory) instead of imposing
the statutorily required three-year minimum mandatory. (*Id.* at 255–63.)
Accordingly, the trial court resentenced Petitioner on July 19, 2011, to the
original sentence—50 years' imprisonment with *no minimum mandatory*.
(*Id.*; ECF No. 15-2 at 2.) Petitioner appealed, but the First DCA later per
curiam affirmed without written opinion on February 21, 2012. (ECF No.
15-1 at 44.) The mandate followed on March 20, 2012. (*Id.* at 43.)

In the meantime, on December 5, 2011, Petitioner filed a motion to
correct sentencing error/illegal sentence pursuant to Rule 3.800(b)(2). (*Id.*
at 265–73.) Petitioner argued that the court legally could not remove the
statutorily required three-year minimum mandatory and that the court
misunderstood that the case had been remanded due to a due process
violation, not because of a sentencing error. (*Id.*) He also argued that
imposing the three-year minimum mandatory violated his right to due
process because, according to his plea agreement, no minimum
mandatory provision was to be imposed. (*Id.*) Petitioner requested a de

novo hearing so he could withdraw his plea. (*Id.*)

Petitioner got his wish on January 3, 2012, when the trial court granted his motion to the extent that Petitioner's sentence had to be corrected to comply with the applicable statutory provision of the three-year minimum mandatory. (*Id.* at 275–80.) To the extent, however, Petitioner argued he should be allowed to withdraw his plea, the court dismissed the claim without prejudice so he could file a motion pursuant to Fla. R. Crim. P. 3.850. (*Id.*) Accordingly, as Petitioner requested, the court re-imposed the three-year minimum mandatory at Petitioner's third resentencing on January 25, 2012. (ECF No. 15-2 at 9–20.) Although Petitioner made an *ore tenus* motion at the hearing to withdraw his plea, the court denied his motion. (*Id.*)

Petitioner then filed an *Anders* appeal of his third resentencing. The First DCA, however, per curiam affirmed with a written opinion on December 5, 2012. (ECF No. 15-1 at 47–49.) The First DCA concluded that the trial court correctly found Petitioner's motion under 3.800 was not the proper avenue to seek withdrawal of his plea. (*Id.*) The First DCA also determined that the record refuted Petitioner's claim that his original plea precluded the entry of the statutorily required three-year minimum mandatory. (*Id.*) The mandate followed on February 13, 2013. (*Id.* at 46.)

Petitioner proceeded to file a third motion for postconviction relief on October 31, 2013. (*Id.* at 51–68.) The trial court, however, struck the motion as facially/legally insufficient on January 6, 2014, with leave to amend. (*Id.* at 110–13.)

Petitioner then filed an amended motion for postconviction relief on January 23, 2014. (*Id.* at 114–21.) Petitioner argued that his plea was involuntary because the trial court, the state, and trial counsel misadvised him he would be sentenced to a term of years without a minimum mandatory provision, which would allow him to earn gain time on the entirety of his sentence. (*Id.*) The state trial court denied the motion on May 30, 2014. (*Id.* at 125–32.) Petitioner appealed and the First DCA per curiam affirmed without written opinion on October 8, 2014. (ECF No. 15-2 at 32–48.)

Petitioner then filed the instant Petition in this Court on April 20, 2015. (ECF No. 1.)

## II. <u>Scope of Federal Habeas Review</u>

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a

"full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

The role of a federal habeas court when reviewing a state prisoner's application pursuant to § 2254 is limited. *Williams v. Taylor*, 529 U.S. 362, 403–04 (2000). Under § 2254(a), federal courts "shall entertain an

application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

Additionally, federal courts must give deference to state court adjudications unless the state court's adjudication of the claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* § 2254(d)(1). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054–55 (11th Cir. 1983).

Moreover, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 120–21 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). A federal writ of habeas corpus is only available in cases of federal constitutional error. *See Jones v. Goodwin,* 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro,* 909 F.2d 451, 452 (11th Cir. 1990). The limitation on federal habeas review applies with equal force

when a petition, which truly involves only state law issues, is "couched" in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not

attempt to divine the lawyer's mental processes underlying the strategy."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on. The lawyer's strategy was course A. And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of

counsel claim on the merits, the standard a petitioner must meet to obtain

federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The

standard is not whether an error was committed, but whether the state

court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 105. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## III.  Discussion

Petitioner phrases his sole ground for relief as follows: "Tr[ia]l court's r[i]gid and erroneous decision to not attach portions of the record to refute defendant's claim or hold an evidentiary hearing, denies defendant his constitutional right to withdraw his involuntary plea that was obtained in violation of defendant's due process right and makes the plea void." (ECF No. 1 at 5.)  He expands upon this ground in his attached memorandum of law. (*Id.* at 15–25.) In the memorandum, Petitioner re-asserts that the trial court abused its discretion in not attaching the record to its order or holding an evidentiary hearing on his amended motion for postconviction relief. He says this violates state law and federal constitutional provisions, thereby

making his plea void. He goes on to argue, however, that the trial court's denial of his motion to withdraw his plea violates his rights under the Fifth, Sixth, and Fourteenth Amendments. As support, Petitioner argues under *Strickland*, trial counsel rendered deficient performance thereby prejudicing Petitioner. Specifically, Petitioner says counsel advised Petitioner that he would earn gain time on the entirety of his sentence. Counsel, however, failed to inform Petitioner of the three-year minimum mandatory sentence pertaining to his charges, which, had Petitioner known, would have prompted him to reject the plea offer and proceed to trial. Petitioner therefore asks the Court to invalidate his plea agreement.

The face of the Petition suggests Petitioner's sole ground for relief is one alleging trial court error and an involuntary plea resulting in a due process violation. Respondent, appears to have liberally (and properly) construed Petitioner's claim as one alleging ineffective assistance of counsel. Respondent therefore has not directly addressed Petitioner's claim in terms of trial court error or a due process violation. Nonetheless, in an abundance of caution the Court will address Petitioner's claim to the extent it is construed as alleging (1) trial court error pertaining to his amended postconviction motion, (2) ineffective assistance of counsel, and (3) an involuntary plea resulting in a due process violation.

First, to the extent Petitioner argues the trial court violated his right to due process by denying his amended motion for postconviction relief without an evidentiary hearing and without attaching relevant portions of the state court record, Petitioner's claim fails to raise a federal constitutional issue on which relief can be granted.

A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). "Questions of state law rarely raise issues of federal constitutional significance, because 'a state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'" *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1053–54 (11th Cir. 1983)). Federal habeas relief will only be granted for state law errors if the alleged errors were so critical that they rendered

the entire trial fundamentally unfair in violation of the right to due process. *Id*.; *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988). Further, "defects in state collateral proceedings do not provide a basis for federal habeas relief." *Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009).

Contrary to Petitioner's assertion, the trial court did indeed attach the portions of the state court record it relied upon in summarily denying his amended postconviction motion. (ECF No. 15-1 at 125–294; ECF No. 15-2 at 1–30); *see also Hilbert v. State*, 981 So. 2d 1274 (Fla. Dist. Ct. App. 2008) (if a trial court enters an order denying the postconviction motion without an evidentiary hearing (a summary denial), the court must attach record excerpts conclusively showing that the appellant is not entitled to any relief or an evidentiary hearing). There can be no error where the trial court did what Petitioner contends it did not.

Furthermore, Petitioner's argument that the trial court erred in denying his claim without an evidentiary hearing merely raises an infirmity in the state collateral proceedings. This does not warrant federal habeas relief. *See Carroll*, 574 F.3d 1365 (rejecting claim that the state court violated petitioner's due process rights by summarily denying his Rule 3.850 claim); *Brown v. McNeil*, No. 09-61055-Civ-SEITZ, 2010 WL

6405670, at *11 (S.D. Fla. July 12, 2010), *report and recommendation adopted*, 2011 WL 1212246 (Mar. 30, 2011). Accordingly, to the extent Petitioner's claim challenges the trial court's summary denial, his claim should be denied.

Turning to Petitioner's constitutional claims, to be clear, Petitioner makes no challenge to the length of his sentence. Rather, his sole complaint is that he is not entitled to earn gain time over the entirety of his fifty-year sentence.[6]  Petitioner argues had he known about the three year minimum mandatory sentence he would have gone to trial. This claim is properly construed as an ineffective assistance of counsel claim. Respondent says this claim is without merit and the Court agrees. The Court also finds that this claim is nonetheless unexhausted and procedurally defaulted.[7]

Petitioner never raised this claim in the state courts. Although he argued in his amended motion for postconviction relief that counsel misadvised Petitioner there was no minimum mandatory and that Petitioner

---

[6] A defendant sentenced under the mandatory gun law in § 775.087(2) (1997), is prohibited from earning gain time while serving the three-year minimum mandatory sentence. *See supra* n.5.

[7] Although Respondent addresses the merits of Petitioner's claim, Respondent nonetheless "asserts all available procedural bars." (ECF No. 15 at 1, 9.)

would be eligible to receive gain time on the entirety of his sentence, his motion lacks any mention of ineffective assistance of counsel. And despite mentioning his Sixth Amendment rights, Petitioner presented no federal authority in support of his argument and instead referenced various cases under Florida state law. This was insufficient to provide the state courts a meaningful opportunity to pass upon his federal claim. Indeed, the state court specifically declined to construe his claim as an ineffective assistance of counsel claim because Petitioner did not allege that his trial counsel was ineffective. (ECF No. 15-1 at 130 n.15); *see Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (to exhaust state remedies, petitioner must make state court aware that his claims asserted present federal constitutional issues). Petitioner's ineffective assistance of counsel claim is, therefore, unexhausted.

Petitioner would be procedurally barred from asserting this issue in a state postconviction motion because more than two years have passed since the judgment and sentence became final and because such an argument would not be based upon new facts that were previously unknown to Petitioner or his attorney. *See* Fla. R. Crim. P. 3.850(b) (providing a two-year limitations period). Additionally, Rule 3.850 bars the filing of second or successive postconviction motions. *See* Fla. R. Crim. P.

3.850(h). Petitioner's ineffective assistance of counsel claim is therefore procedurally defaulted.

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). To show prejudice, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

In this case, Petitioner has failed to demonstrate cause and prejudice for the default and has also failed to demonstrate a fundamental miscarriage of justice. Nothing suggests that Petitioner's failure to raise

this claim in state court was the result of anything external to Petitioner. Furthermore, Petitioner cannot show that enforcing the procedural default would result in a fundamental miscarriage of justice because his case does not involve new evidence. Accordingly, the procedural default on this claim cannot be excused.

Alternatively, even assuming Petitioner's ineffective assistance of counsel claim was exhausted (and therefore not procedurally defaulted), there is no merit to Petitioner's claim. The record refutes Petitioner's claim that he did not know about the minimum mandatory, which effected his ability to earn gain time. Contrary to Petitioner's assertion that his negotiated plea provided that he would not be subject to a minimum mandatory, there is no such agreement in Petitioner's plea agreement. Instead, the only "terms of plea entry and sentencing recommendation agreed upon by the state and defendant," were that the plea was "straight up." (ECF No. 15-1 at 70–76.) "A 'straight up' or 'open plea' does not amount to a bargained for plea." *Godfrey v. State*, 947 So. 2d 565, 567 (Fla. Dist. Ct. App. 2006) (citation omitted).

Additionally, during Petitioner's original sentencing, the trial court judge conducted a lengthy plea colloquy with Petitioner. (ECF No. 15-1 at 16–30.) During the plea colloquy Petitioner confirmed that he signed the

plea agreement, read the plea agreement and discussed it with his

attorney, understood all of the terms of the plea agreement (including that

the plea was "straight up"), and discussed the maximum and minimum

sentence with his attorney. (*Id.* at 16–21.) More importantly, Petitioner

confirmed that he understood the state was seeking habitual felony

offender status, which meant he would not be entitled to as much gain

time. The transcript of the sentencing hearing reflects the following:

> THE COURT: And you're aware that the maximum penalty that I can impose against you as a habitual offender is life, and that's with no chance of –
> MR. SCHERLING:[8] Well, they don't get as much gain time.
> THE COURT: But with no chance of parole. And all of these cases he would have the gain time.
> MR. SCHERLING: Correct. And he received some of the gain time, but they don't get the amount of gain time if he is not habitualized.
> . . . .
> THE COURT: And you are aware that being sentenced as a habitual offender will affect the possibility of early release through certain programs, including conditional release and early release programs?
> [PETITIONER]: Yes, sir.
> THE COURT: In addition are you aware that you may not be entitled to gain time or any other time off on your sentence?
> [PETITIONER]: Yes, sir.
> THE COURT: In fact do you understand that no one can guarantee you the exact amount of time that you would serve other than to tell you that you will not serve in excess of the time to which you are being sentenced?

---

[8] Mr. Scherling was the state prosecutor in Petitioner's underlying criminal case.

> [PETITIONER]: Yes, sir.
> THE COURT: Has anybody represented anything to you
> other than that?
> [PETITIONER]: No, sir.

(*Id.* at 22–24.)

Although the plea colloquy pertained to Petitioner's habitual felony offender status, Petitioner nonetheless acknowledged that he would be entitled to either less or no gain time. This suggests that counsel did indeed discuss with Petitioner that he would not be entitled to as much gain time. Based on these factors, Petitioner has failed to demonstrate that counsel rendered deficient performance.

Nonetheless, even if counsel did not advise Petitioner of the minimum mandatory and the loss of gain time consequences prior to Petitioner's change of plea, Petitioner has failed to establish that he would have gone to trial had he known of the three-year minimum mandatory. Petitioner knew at the plea colloquy that he would not be entitled to as much gain time—whether in light of his status as a habitual felony offender or otherwise. Petitioner, however, still entered his plea. He therefore cannot demonstrate that he would not have entered a plea had he known he would not be entitled to gain time on the entirety of his sentence in light of the three-year minimum mandatory.

Furthermore, as discussed, Petitioner's sole issue in this case is with his inability to earn gain time on the entirety of his fifty-year sentence—not the fifty-year sentence itself. What is ironic, however, is Petitioner already got what he wanted. Petitioner and his appointed counsel successfully convinced the trial court during his second resentencing to remove the minimum mandatory provision of the sentence. At that point, Petitioner was eligible to earn gain time on the entirety of his sentence—thereby removing the sole reason which he says rendered his plea involuntary. Yet, Petitioner thereafter appealed that resentencing. This refutes Petitioner's claim that he would not have entered a plea had he known about the three-year minimum mandatory. Therefore, the Court concludes that Petitioner has failed to demonstrate either deficient performance or prejudice under *Strickland*. Accordingly, his ineffective assistance of counsel claim fails.

Finally, even if Petitioner's claim is construed as a stand-alone due process claim, his claim is without merit for the same reasons as the ineffective assistance of counsel claim. To begin, the state court denied this due process claim on the merits. (ECF No. 15-1 at 125–32; ECF No. 15-2 at 45–48.) That decision is entitled to deference.[9]

---

[9] Although the state court noted it "questions whether Defendant's instant claim is even legally and/or facially sufficient pursuant to Rule 3.850," (ECF No. 15-1 at 130), there is no merit to this claim so the Court need not address whether Petitioner properly exhausted this claim.

Petitioner has failed to demonstrate that the state court's decision is contrary to or involved an unreasonable application of clearly established federal law. The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

> A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process: "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."

*Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991) (quoting *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980)). While a defendant's statements during a plea colloquy are not insurmountable, "the representations of the defendant [and] his lawyer [at a plea hearing] . . . as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *United States v. Rogers*, 848 F.2d 166,

168 (11th Cir.1988).

After the court conducted a lengthy plea colloquy, the trial judge accepted Petitioner's plea, which he found Petitioner entered into freely, voluntarily, and knowingly. (ECF No. 15-1 at 37.) As discussed, the record refutes Petitioner's claim that he negotiated a plea that did not include a minimum mandatory sentence. The record also demonstrates that Petitioner was aware prior to the plea hearing that he would be entitled to less or no gain time. The record further demonstrates that Petitioner would have entered into his plea regardless of a three-year minimum mandatory preventing him from earning gain time on the entirety of his sentence. Petitioner has failed to demonstrate that his plea was not made freely, voluntarily, or knowingly. His due process claim therefore fails to warrant federal habeas relief.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section

2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a writ of habeas corpus, ECF No. 1, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**DONE AND ORDERED** this 18th day of July 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.